IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

**WILLIAM GIRLINGHOUSE and**
**TONI GIRLINGHOUSE**                                        **PLAINTIFFS**

v.                                 **NO. 6:15-CV-6008-SOH**

**CAPELLA HEALTHCARE, INC., et al.**                    **DEFENDANTS**

<u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

Defendants Capella Healthcare, Inc. and NPMC Holdings, LLC (collectively, "defendants"), for their statement of undisputed material facts, as required by Local Rule 56.1, state:

1.      Plaintiffs William and Toni Girlinghouse ("plaintiffs') filed this diversity action, alleging medical malpractice against defendants. (Doc. #1, at ¶¶ 1, 39–40.)

2.      Plaintiffs' cause of action arises out of Mr. William Girlinghouse's January 2013 hospital admission at National Park Medical Center ("NPMC") in Hot Springs, Arkansas. (Doc. #1, ¶¶ 36–38.)

3.      Plaintiffs allege that "[o]n or about January 29, 2013[,] Girlinghouse began to suffer decreased oxygenation," and "[t]he nursing staff at [NPMC] did not adequately respond to the decreased oxygenation and refused to call Girlinghouse's physician to address it." (Doc. #1, ¶ 37.)

4.      To support their allegations of negligence against defendants, plaintiffs disclosed Dorothy Cooke as their nursing standard of care expert. (*See* April 1, 2016 Email from Plts.' Counsel, attached as Ex. A to Motion for Summary Judgment.)

5.    In her report, Nurse Cooke sets forth specific criticisms of the NPMC nurses who cared for Mr. Girlinghouse during the admission at issue. (*See* Cooke Report, attached as Ex. B to Motion for Summary Judgment.)

6.    Her criticisms are pointed at three different groups: (1) Marilyn Feimster, LPN, the nurse who cared for Mr. Girlinghouse before he was transferred to the ICU on January 30, 2013; (2) the ICU nursing staff, for care beginning on the night of January 20, 2013; and (3) Patsy Crumptom, NPMC's Chief Nursing Officer, for her alleged lack of oversight of Nurse Feimster and the unnamed ICU nurses. (*See* Ex. B, pp. 3–4.; *see also* Excerpts from Cooke Deposition, p. 78:11–23, attached as Exhibit C to Motion for Summary Judgment.)

7.    To further explore and confirm Nurse Cooke's opinions, defendants took her deposition on May 16, 2016. (*See* Ex. C, p. 1.) During this deposition, Nurse Cooke reaffirmed the opinions that she stated in her report. (*See* Ex. C, p. 52:2–5.) Nurse Cooke's opinions regarding Marilyn Feimster are limited to care provided on January 30, 2013, up until Mr. Girlinghouse was transferred to the ICU around 7:00 p.m. (*See* Ex. C, pp. 78:11–23, 115:14–18, 124:24–126:4.)

8.    At her deposition, Nurse Cooke testified that the only criticism she had regarding nursing care occurring after January 30, 2013, was related to an alleged failure of the ICU nurses to "have conferred with presumably Dr. Shah," a pulmonologist, in order to get "an adequate level of sedation." (*See* Ex. C, p. 98:1–18.) Her criticism regarding sedation was limited to the time Mr. Girlinghouse "was on the ventilator." (*See* Ex. C, p. 52:9–15.)

2

9.     When asked whether she had "any knowledge of the nursing management of [Mr. Girlinghouse] on the ventilator after January 31st, 2013," Nurse Cooke testified that her only knowledge came from Mrs. Girlinghouse's deposition testimony—"that Mr. Girlinghouse was thrashing around such that he hurt his shoulder and they had to get an order for restraints." (*See* Ex. C, p. 147:22–148:3.)

10.     Significantly, Nurse Cooke testified that she was not critical of any NPMC nurse regarding the delay in intubating Mr. Girlinghouse on January 31, 2013. (*See* Ex. C, pp. 136:1–140:22.)

11.     Nurse Cooke is the one and only standard of care expert designated by plaintiffs in this lawsuit. (*See* Ex. A.)

12.     As to the issue of proximate causation, plaintiffs disclosed Dr. Donald Brady, a treating neurologist, as their expert witness. (*See* Plaintiffs' Designation of Expert Witnesses, pp. 1–2, attached as Exhibit D to Motion for Summary Judgment.)

13.     Specifically, plaintiffs stated that Dr. Brady was "expected to testify that the negligence described by Toni Girlinghouse and delays in addressing Ron Girlinghouse's decompensation on the day in question resulted in a permanent brain injury." (*See* Ex. D, pp. 1–2.)

14.     Defendants took Dr. Brady's deposition on May 20, 2016, to further explore his expert opinions in this case. (*See* Excerpts from Brady Deposition, p. 1, attached as Exhibit E to Motion for Summary Judgment.) Dr. Brady testified that

Mr. Girlinghouse's oxygen saturation percentage on January 30, 2013, never dropped low enough to cause hypoxic ischemic encephalopathy (i.e., brain damage). (*See* Ex. E, pp. 35:6–36:12.)

15.    The only event or episode that Dr. Brady attributes as a proximate cause of Mr. Girlinghouse's permanent brain injury occurred on January 31, 2013. (*See* Ex. E, pp. 41:14–43:10.) Specifically, Dr. Brady testified that "when [Mr. Girlinghouse] really had enough of a problem to cause some more serious confusion or difficulty in oxygenation to the brain, it would have been on the 31st or thereafter." (*See* Ex. E, p. 43:8–10.)

16.    Even when questioned by plaintiffs' counsel, Dr. Brady again testified that Mr. Girlinghouse did not experience enough hypoxia prior to the time when his oxygen saturation dropped into the 60s on January 31, 2013, "to have caused any permanent injury." (*See* Ex. E, pp. 69:18–70:14.)

17.    While Dr. Brady believes that Mr. Girlinghouse suffered a brain injury on January 31, 2013, he testified that the cause of that injury was not solely a hypoxic ischemic insult. (*See* Ex. E, pp. 16:19–19:11, 19:22–20:18.)

18.    Dr. Brady testified that the brain injury was multifactorial. (*See* Ex. E, pp. 16:19–19:11, 19:22–20:18.) Some of these other factors included renal insufficiency, prolonged sedation, acute narcotic withdrawal, alcohol withdrawal, environmental factors, sepsis, and multi-organ insult. (*See* Ex. E, pp. 16:19–19:11, 19:22–20:18.)

19.     Plaintiffs took the deposition of non-retained pulmonology expert, Dr. Siddarth Shah, on May 16, 2016. (*See* Excerpts from Shah Dep., p. 1, attached as Exhibit F to Motion for Summary Judgment.) Dr. Shah is another one of the physicians who treated Mr. Girlinghouse's during the hospital admission that is at issue in this lawsuit. (*See* Ex. F, p. 14:19–22.)

20.     During this deposition, Dr. Shah was asked about a progress note he authored at 6:40 p.m. on January 30, 2013. (*See* Ex. F, p. 31:4–16.) Although he was pressed numerous times, Dr. Shah consistently testified that he appropriately intervened in Mr. Girlinghouse's care on January 30, 2013. (*See* Ex. F, pp. 35:23–37:1.)

21.     When asked whether sooner intervention on January 30, 2016, would have changed Mr. Girlinghouse's course of treatment, Dr. Shah testified that "it is really difficult to say that, if I had acted this way 12 hours earlier, outcome would have been different. I wouldn't say so, because that didn't happen here. . . . I really cannot conclusively tell you that whatever I did, if I had done 24 hours earlier or 12 hours earlier or five hours earlier, would have led to a better outcome." (*See* Ex. F, pp. 58:10–59:14.)

1322792-v1

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: dglover@wlj.com; djung@wlj.com

By /S/ *David P. Glover*
    David P. Glover (99148)
    David C. Jung (2013141)

    *Attorneys for Capella Healthcare, Inc.,*
    *and NPMC Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

    Mr. James E. Girards
    THE GIRARDS LAW FIRM
    10000 North Central, Suite 400
    Dallas, TX 75231

    /S/ *David P. Glover*
    David P. Glover

6

1322792-v1