IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

WILLIAM GIRLINGHOUSE and
TONI GIRLINGHOUSE                                                    PLAINTIFFS

v.                            NO. 6:15-CV-6008-SOH

CAPELLA HEALTHCARE, INC., et al.                                     DEFENDANTS

MEMORANDUM REPLY BRIEF IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON THE ISSUE OF PROXIMATE CAUSATION

Defendants Capella Healthcare, Inc. and NPMC Holdings, LLC (collectively, "defendants"), for their memorandum in support of summary judgment on the issue of proximate causation, state:

I.   INTRODUCTION

Summary judgment is appropriate because plaintiffs are unable to offer proof of proximate causation that links the allegations of negligence to Mr. Girlinghouse's brain injury. At the close of discovery, the proof of record that could support plaintiffs' claims of negligence against defendants came from Dorothy Cooke, plaintiffs' nurse expert. In her deposition, Nurse Cooke unequivocally testified that all the alleged negligence occurred on January 30, 2013.

With this in mind, to sustain their claims against defendants, plaintiffs needed proof of proximate causation that connected Nurse Cooke's allegations to Mr. Girlinghouse's brain injury. The only qualified experts who offered any testimony on proximate causation in this case are Dr. Siddarth Shah (Mr. Girlinghouse's pulmonologist) and Dr. Donald Brady (Mr. Girlinghouse's

neurologist). Neither expert holds the opinion that any act or omission occurring on or before January 30, 2013, proximately caused Mr. Girlinghouse's permanent brain injury.

In response to defendants' motion, plaintiffs attempts to augment the proof of record so as to extend the timeline on the allegations of negligence to match up with the testimony of Drs. Shah and Brady. For the first time, plaintiffs now allege that the defendants were negligent **after** January 30, 2013. These new allegations come in the form of two affidavits: one authored by plaintiff Toni Girlinghouse and one authored by Nurse Cooke.

This new proof is improper for three reasons. First, both Mrs. Girlinghouse's and Nurse Cooke's new-found opinions are being offered **after** the close of your honor's discovery deadline. Second, Arkansas law precludes Mrs. Girlinghouse from offering expert opinions in this case. Third, nurses are not qualified to offer opinions on proximate causation.

## II.   ARGUMENT

### A.   Plaintiffs' late-disclosed expert opinions should not be considered.

Under the federal discovery rules, a party must identify any expert witness he or she "may use at trial." Fed. R. Civ. P. 26(a)(2)(A). In addition, if the witness in question was "retained or specially employed to provide expert testimony in the case," that expert must provide a written report containing, among other things, a complete explanation of the expert's opinions and the basis for them, all facts or data relied upon by the expert in forming the opinions, and the expert's qualifications. Fed. R. Civ. P. 26(a)(2)(B). If not otherwise set by a scheduling order

2

or a stipulation of the parties, these disclosures are due 90 days prior to trial. Fed. R. Civ. P. 26(a)(2)(D)(i).

Under Rule 37(c) of the Federal Rules of Civil Procedure, if an expert witness's identity and report are not timely and properly disclosed, that expert's testimony generally will not be admissible at trial, in support of or opposition to a motion, or for any other purpose:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). As the Eighth Circuit has explained, the purpose of this rule is to eliminate unfair surprise to the opposing party and to conserve judicial resources. *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995). Thus, this rule "provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." *Id.* (quoting Fed. R. Civ. P. 37 advisory committee's note to 1993 amendments).

If a party fails to make full and timely expert witness disclosures, that witness's testimony should be excluded unless the failure was either harmless or substantially justified. *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998). When a defendant has filed a motion for summary judgment based on the lack of expert support for the plaintiff's claims, the failure to make timely disclosure of an expert's opinions is not harmless. *Id.* Further, a plaintiff bearing the burden of proof is not substantially justified in waiting to disclose his expert's opinions until

3

1334145-v1

after he sees the defendant's evidence. *Id.* In fact, the Eighth Circuit has held that it is improper to "permit a post-deposition affidavit to contradict prior testimony in an attempt to create issues of fact." *Taylor v. Cottrell, Inc.*, 795 F.3d 813, 818 (8th Cir. 2015) (citing *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008) ("We have held that '[i]f testimony under oath . . . can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment. A party should not be allowed to create issues of credibility by contradicting his own earlier testimony.'")).

In the *Trost* case, the plaintiff, Trost, in a products liability case involving a bicycle, failed to disclose any expert testimony prior to the expiration of the deadline for such disclosures and made no effort to obtain an extension. *Id.* at 1007. *Trost* did not notify the defendant, Trek, of his intention to have an expert perform tests on the bicycle until more than three weeks **after** the deadline for expert disclosures and did not actually have those tests performed until 12 days **after** Trek filed its motion for summary judgment. *Id.* Trost then filed an affidavit from the expert as part of his response to Trek's motion for summary judgment, and at the hearing on that motion, attempted to serve an additional three page letter from the expert. *Id.* The district court refused to consider the supplemental letter and ruled that the affidavit was inadmissible because it was untimely and did not comport with the requirements for an expert report. *Id.*

On appeal, Trost tried to justify his failure to timely disclose the expert's opinion based on a claim that additional testing was needed to respond to the

4

opinions of Trek's expert. *Id.* at 1008. The Eighth Circuit rejected this argument, holding that a plaintiff bearing the burden of proof must satisfy that burden on each essential element of his claims, without regard to the evidence produced by the defendant:

> Trost had the burden of proof as the plaintiff. He had to produce sufficient competent evidence to make out a prima facie case regardless of what evidence Trek might assemble. **Since failure to disclose in a timely manner is equivalent to failure to disclose**, *see Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.1995), Trost needed to produce competent evidence within deadlines set by the court or risk sanctions under Rules 16 and 37.

*Id.* (emphasis added). In addition, the Eighth Circuit noted that if the plaintiff had truly needed to wait for Trek's disclosures, he could and should have requested an extension of time for making his own disclosures. *Id.* Further, the Court found that since the case was set for trial shortly after the summary judgment hearing, the defendant would have been "significantly prejudiced" by the late disclosure "because of a lack of time to prepare to refute the evidence at trial" and that a continuance would have been disruptive to the district court's schedule. *Id.* Accordingly, the Eighth Circuit affirmed the exclusion of the testimony of Trost's expert. *Id.*

Here, the Court is presented with facts that are, procedurally speaking, almost identical to those that are set out in *Trost*. The Court's operative scheduling order set forth the following relevant deadlines:

- Expert Disclosures:       May 2, 2016          (*See* Doc. 32)
- Rebuttal Disclosures:     June 17, 2016        (*See* Doc. 32)
- Discovery Deadline:       August 1, 2016       (*See* Doc. 44)
- Trial:                    October 24, 2016     (*See* Doc. 34)

1334145-v1

Counsel for the parties were well aware of Court deadlines and, in fact, jointly sought numerous extensions. However, neither plaintiffs nor defendants sought any extension that would permit expert disclosures beyond the dates set forth above. No motion to extend time to disclose was sought from this Court. No motion to file supplemental expert opinions was filed. Instead, plaintiffs unilaterally supplemented new opinions via affidavits in an attempt to defeat defendants' motion for summary judgment. (*See* Exs. 1("A") and 13("M"), at Doc. 52.) Both these affidavits are dated August 27, 2016—nearly one month past the discovery deadline and nearly four months past the expert disclosure deadline. (*See id.*) This is precisely what the *Trost* plaintiff attempted to do and precisely what both the United States District Court and the Eighth Circuit disallowed.

This untimely disclosure is not harmless—it will significantly prejudice defendants in preparing this case for trial. First, as in *Trost*, defendants have filed a motion for summary judgment based on the fact that plaintiffs had no admissible expert witness testimony on proximate causation (specifically, causation testimony that supplied the link to Nurse Cooke's allegations of negligence). Further, the defendants will suffer substantial prejudice beyond their motion for summary judgment. Plaintiffs' untimely disclosure was made less than two months before trial. To appropriately and thoroughly evaluate these new opinions, defendants and their counsel would be forced to review the reports, consult their experts, re-depose plaintiffs' experts, have defendants' experts issue rebuttal reports if necessary, and make their experts available for deposition, all while attempting to prepare for the

trial itself and in addition to tending to preexisting obligations with other matters (not to mention the added expense of undertaking these endeavors). Moreover, depending on their evaluation of plaintiffs' experts new opinions, defendants may very well need to mount a *Daubert* or other challenge. The *Daubert* deadline in this case is September 26, 2016—only a few weeks away. In short, plaintiffs' late disclosure is an attempt to force defendants to concede to the admissibility of these new opinions against which the defendants cannot adequately prepare to defend themselves.

A continuance would not be an adequate remedy for this prejudice. The defendants have worked diligently for nearly 20 months to prepare for this trial. A continuance would be disruptive to this Court's trial docket and would needlessly delay the resolution of this matter. Moreover, because all other discovery is complete—if not for discovery related to these new and untimely opinions—this case would largely remain in stasis if it were continued for other reasons. Defendants should not be subjected to a new round of expert discovery and an open ended delay in resolving this matter based on plaintiffs' failure to comply with this Court's scheduling order and rules of discovery.

Plaintiffs' failure to timely disclose these additional opinions is not "substantially justified." Plaintiffs retained Nurse Cooke in mid-March of this year. Plaintiffs had all the relevant medical records in their possession at the time they hired Nurse Cooke. In her affidavit, Nurse Cooke references not having the benefit of reviewing Dr. Shah's deposition testimony before she offered her opinions in this

case. While this in no way provides "substantial justification," assuming it does, Dr. Shah gave his deposition on May 21, 2016, and the transcript was available soon after. In other words, had plaintiffs sent Nurse Cooke the transcript, she could have attempted to supplement her opinions before the June rebuttal disclosure deadline. That did not happen. Instead, plaintiffs waited until less than two months before trial, **after** the discovery deadline, **after** defendants' filed their motion for summary judgment, and **after** defendants agreed to giving plaintiffs an extension to respond to their motion before disclosing these new opinions.

Apart from Nurse Cooke's hollow assertion that she needed Dr. Shah's deposition transcript, plaintiffs here offer virtually no justification for their untimely disclosure of supplemental opinions. Ultimately, plaintiffs bear the burden of proof on their claims against defendants, and given the Court's dispositive motion deadline, which was extended multiple times, it was plaintiffs' responsibility to marshal sufficient admissible evidence on each element of its claims prior to that deadline. There is no justification for their failure.

The two August 27, 2016 affidavits submitted with plaintiffs' response to defendants' motion for summary judgment are untimely and neither harmless nor substantially justified. The new opinions should be stricken, leaving no proof of proximate causation linking the allegations of negligence—which only point to January 30, 2013—to any damages alleged.

B.  **Plaintiff Toni Girlinghouse cannot give expert testimony in this case.**

Mrs. Girlinghouse's opinions cannot be considered in this case because Arkansas law precludes her from doing so. "No witness whose compensation for his services is in any way dependent on the outcome of the case shall be permitted to give expert testimony." Ark. Code Ann. § 16-114-207(2).

It is important to look to the policy behind this rule. This statue precludes expert witness contingency agreements. *See* Ark. R. Prof. Cond. 3.4(b) ("A lawyer shall not . . . offer an inducement to a witness that is prohibited by law."). While no Arkansas case law interprets this statute, the policy is widely recognized throughout the United States. *See, e.g., Clay v. Bd. of Educ. Of City of St. Louis*, 90 F.3d 1357, 1362 (8th Cir. 1996) (affirming the district court's discounting of the plaintiffs' expert based on the fact, among others, that "the Plaintiffs' expert was retained on a contingency basis, and would be compensated only if [the Plaintiffs] prevailed"); *Farmer v. Ramsay*, 159 F. Supp. 2d 873, 883 (D. Md. 2001) (striking expert's report because "witness contingency fee agreements affirmatively violate the fundamental policy of Maryland and the United States"); *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, No. CIV JFM-99-2573, 2000 WL 976800, at *3 (D. Md. June 19, 2000) ("Financial arrangements that provide incentives for the falsification or exaggeration of testimony threaten the very integrity of the judicial process which depends upon the truthfulness of the witnesses."); *J&J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 367 n.8 (D.N.J. 2002) ("A contingent fee

1334145-v1

arrangement with an expert witness would be unethical, and would undermine or destroy the reliability of the survey design and execution.").

Here, Mrs. Girlinghouse is a named plaintiff. At the onset of the case, opposing counsel disclosed that he might offer Mrs. Girlinghouse as a witness. In the spirit of good faith, undersigned counsel provided opposing counsel with this statute and told him we would move to strike Mrs. Girlinghouse. There is no indication she is charging any fees for her opinions, but that does not amount to a relevant distinction. Mrs. Girlinghouse is undeniably seeking damages to compensate her for her losses flowing from Mr. Girlinghouse's injury. If she was allowed to testify as an expert, the incentive for her "falsify or exaggerate" her opinions is obvious. The potential consequences thereof are too great to leave to the trier of fact to decide as a matter of credibility or bias. Accordingly, Mrs. Girlinghouse's affidavit should be stricken and not considered in support of plaintiffs' response to defendants' motion for summary judgment.

**C.    Under Arkansas law, nurses are unqualified to offer opinions on proximate causation.**

In their response, plaintiffs cite *Rose Care, Inc. v. Ross*, 91 Ark. App. 187, 209 S.W.3d 393 (Ark. App. 2005), for the proposition that "the testimony of a registered nurse is sufficient to support proximate causation in a medical malpractice case." (*See* Doc. 53, at ¶ 4(b).) The quotation from the *Rose Care, Inc.* case is pulled out of context. While setting forth the facts of the case, the Court of Appeals summarized the testimony of the expert witnesses as follows:

> [Olive Brown, RN] testified that Rose Care failed to meet the standard of care for nursing homes in five particular areas: 1) the monitoring of

10

> Mrs. Givens's weight; 2) the monitoring of Mrs. Givens's hydration status; 3) the management and prevention of pressure ulcers; 4) the provision of an appropriate care plan; 5) the use of restraints.

*Id.* at 201, 209 S.W.3d at 401. Immediately preceding this language, the court sets out the basis of the appeal:

> Rose Care **does not argue that appellee's proof was deficient for lack of expert qualifications**, lack of testimony on a breach of the applicable standards of care, or failure to state opinions within a reasonable degree of medical certainty. **Its argument on appeal is confined—as it was below—to the third statutory element, *i.e.*, that expert testimony as to proximate cause was wanting in this case.**

*Id.* (emphasis added). In other words, the defendants did not challenge Nurse Brown's qualifications to offer opinions regarding proximate causation. *See id.* They simply argued that the proof was altogether lacking. *See id.* This is further evidenced by the court of appeal's summary paragraph on that point:

> Although Nurse Brown did not make the exact statement in her testimony that Rose Care's lack of care "proximately caused" Mrs. Givens's injuries, **Arkansas does not require any specific "magic words" with respect to expert opinions, and they are to be judged upon the entirety of the opinion, not validated or invalidated on the presence or lack of "magic words."**

*Id.* at 202, 209 S.W.3d at 402 (citing *Wal-Mart Stores, Inc. v. Kilgore*, 85 Ark. App. 231, 148 S.W.3d 754 (Ark. App. 2004)) (emphasis added).

Another Arkansas Court of Appeals opinion, unlike *Rose Care, Inc.*, does discuss the qualifications of a nurse on the issue of proximate causation. *See Carter v. St. Vincent Infirmary*, 15 Ark. App. 169, 690 S.W.2d 741 (Ark. App. 1985). In *Carter*, a medical malpractice case, the plaintiff appealed after a jury verdict in the defendant's favor. *Id.* at 170, 690 S.W.2d at 742.

11

> The issue on appeal [was] whether the trial court erred in excluding the rebuttal testimony of Cathy Bradshaw, a registered nurse who had special training as an Infection Control Practitioner. We agree with [the plaintiff] that this witness should have been allowed to testify in rebuttal, **subject to exclusion on proper objection to those specific portions of her testimony which may have been inadmissible.**

*Id.* at 170–71, 690 S.W.2d at 743 (emphasis added). The court continued on to hold as follows:

> In the case at bar it is clear that Nurse Bradshaw's testimony would not have been admissible in [the plaintiff's] case in chief; however, it became relevant and admissible evidence on rebuttal which the jury was entitled to consider and weigh. **Of course, the witness was not qualified to make a diagnosis of [the plaintiff's injury and the causation thereof.**

*Id.* at 175, 690 S.W.2d at 745 (emphasis added).[1] This holding is consistent with the vast majority of sister jurisdictions throughout the United States. *See, e.g., Vaughn v. Mississippi Baptist Med. Ctr.*, 20 So. 3d 645 (Miss. 2009) ("We now explicitly hold that nurses cannot testify as to medical causation."); *see also Elswick v. Nichols*, 144 F. Supp. 2d 758 (E.D. Ky. 2001); *Phillips v. Alamed Co., Inc.*, 588 So. 2d 463 (Ala. 1991)); *Long v. Methodist Hosp. of Indiana, Inc.*, 699 N.E.2d 1164 (Ind. Ct. App. 1998); *Richberger v. West Clinic, P.C.*, 152 SW.3d 505 (Tenn. Ct. App. 2004); *Colwell v. Holy Family Hosp.*, 15 P.3d 210 (Wash. Ct. App. 2001).

But even more dispositive of this issue is the Arkansas Supreme Court's holding in *Neal v. Sparks Regional Medical Center*, a medical malpractice case. 2012 Ark. 328, 422 S.W.3d 116. There, the Supreme Court affirmed the trial court's

---

[1] Though the issue was not specifically addressed on appeal, in *Neal v. Sparks Regional Medical Center*, a medical malpractice case, the Arkansas Supreme Court affirmed a trial court's grant of summary judgment for the plaintiff's failure to submit proof on the essential element of proximate causation. 2012 Ark. 328, 422 S.W.3d 116.

1334145-v1

grant of summary judgment in favor of the defendant hospital. *Id.* In the motion, the defendants argued that there was no proof of proximate causation. *Id.* The trial court ruled as follows:

> [Appellants] have failed to sustain the burden of proof to meet facts with fact or refute any of the material facts in this case. . . . **Although a nurse may be an expert witness as to the standard of care for other nurses, it is not proper for a nurse to offer testimony on the issue of proximate causation as this is outside of the area of their expertise.**

*Id.* at 5, 422 S.W.3d at 119 (emphasis added). After reviewing the record, the supreme court held as follows:

> [I]n order to overcome [the defendant's] motion for summary judgment, [the plaintiffs] were required to present proof that, but for the failure of the [defendant] nurses to administer Plavix or the failure to notify Dr. Alemparte, Langston would not have died. **However, [the plaintiffs] failed to meet proof with proof on this issue.** . . .
>
> \* \* \*
>
> Here, the circuit court based its order of summary judgment on the following finding: "Plaintiffs have failed to sustain the burden of proof to meet facts with fact or refute any material facts in this case." Based on the foregoing reasons, we hold that the circuit court did not err in this ruling. With the doctors' expert opinions lacking proximate cause, [the plaintiffs] were duty bound to meet proof with proof, which they did not produce.

*Id.* at 9–11, 422 S.W.3d at 121–22 (emphasis added).

Here, in addition to the arguments made under sections II. A and B, above, plaintiffs' new affidavits should not be considered because neither Mrs. Girlinghouse nor Nurse Cooke, as nurses, are qualified to offer opinions regarding proximate causation. Defendants' argument applies only in so far as plaintiffs' attempt to offer proof of causation that links the January 30, 2013 allegations of

1334145-v1

negligence to Mr. Girlinghouse's injury. As was originally briefed, the testimony of Drs. Shah and Brady establishes that no permanent injury occurred until January 31, 2013, which neither of them attributed to the fault of anyone. Therefore, defendants' motion for summary judgment should be granted for want of proximate causation.

## IV. CONCLUSION

Under the Arkansas Medical Malpractice Act, a plaintiff bears the burden of proving breach of the standard of care and proximate causation through qualified expert opinion testimony. Here, plaintiffs Toni and William Girlinghouse are unable to demonstrate any proof on the essential element of proximate causation. In response to defendants' motion, plaintiffs attempt to supplement opinions extending the window of negligence from January 30, 2013 to January 31, 2013. These disclosures are untimely, are in derogation of this Court's scheduling order, and should be stricken. Left without proof of proximate causation, plaintiffs are unable to state a prima facie case of medical negligence, leaving no question for the jury to decide. Accordingly, summary judgment is proper. Therefore, defendants respectfully request that their motion for summary judgment be granted, that plaintiffs' complaint against them be dismissed with prejudice, and for all other relief to which they are entitled.

        WRIGHT, LINDSEY & JENNINGS LLP
        200 West Capitol Avenue, Suite 2300
        Little Rock, Arkansas 72201-3699
        (501) 371-0808
        FAX: (501) 376-9442
        E-MAIL: dglover@wlj.com; djung@wlj.com


By /S/ *David P. Glover*
    David P. Glover (99148)
    David C. Jung (2013141)

    *Attorneys for Capella Healthcare, Inc.,*
    *and NPMC Holdings, LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

    Mr. James E. Girards
    THE GIRARDS LAW FIRM
    10000 North Central, Suite 400
    Dallas, TX 75231

        /S/ *David P. Glover*
        David P. Glover