IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

WILLIAM GIRLINGHOUSE, et al.                                        PLAINTIFFS

v.                                    Case No. 6:15-cv-6008

CAPELLA HEALTHCARE, et al.                                          DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 47). Plaintiffs have filed a response. (ECF No. 52). Defendants have filed a reply. (ECF No. 55). Plaintiffs have filed a sur-reply. (ECF No. 59). Defendants have filed a response to Plaintiffs' sur-reply. (ECF No. 61). The Court finds this matter ripe for consideration.

## BACKGROUND

This case arises out of an alleged medical malpractice action. On January 27, 2013, Plaintiff William Girlinghouse ("Mr. Girlinghouse") was admitted into National Park Medical Center ("NPMC") in Hot Springs, Arkansas, and was diagnosed with pancreatitis. On January 30, 2013, while at NPMC, Mr. Girlinghouse's oxygen saturation percentage began to decrease, reaching a low of 83 percent. He was moved to the ICU later that evening. On January 31, 2013, Mr. Girlinghouse's oxygenation level declined to the 60s range. He was intubated and put on a ventilator. On February 12, 2013, he was extubated. At this time, Dr. Donald Brady found that Mr. Girlinghouse had "mild to moderate" delirium and had suffered a hypoxic-ischemic insult with acute respiratory failure.[1] On February 20, 2013, he was moved out of ICU and was discharged to inpatient rehabilitation on February 26, 2013.

---

[1] Dr. Brady defined hypoxic-ischemic insult as "an episode or a problem with significant hypoxia, problems with somebody's breathing . . . [where] they become severely hypoxic and need to be on the ventilator or something of that sort." (ECF No. 47-5, at 23:12 – 23:18).

On January 28, 2015, Plaintiffs William Girlinghouse and Toni Girlinghouse filed this this lawsuit against Defendants Capella Healthcare, Inc. and NPMC Holdings, LLC,[2] alleging that the NPMC nursing staff did not adequately respond to Mr. Girlinghouse's decreased oxygenation levels and refused to call his physician to address the problem. Plaintiffs argue that if NPMC medical staff had intervened and intubated Mr. Girlinghouse before January 31, 2013, he would not have suffered hypoxic ischemic encephalopathy,[3] causing permanent brain damage. Plaintiffs allege that Defendants' negligence caused severe injury that has resulted in past and future mental anguish, permanent physical impairment, medical expenses, life care expenses, lost earnings, and loss of earnings capacity. Plaintiff Toni Girlinghouse also seeks damages for loss of consortium. Defendants have filed the present Motion for Summary Judgment, arguing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty*

---

[2] Plaintiffs also named Hot Springs National Park Hospital Holdings, LLC as a defendant in their Complaint, but later moved to voluntarily dismiss the party. (ECF No. 5). This Court dismissed Hot Springs National Park Hospital Holdings, LLC without prejudice on March 20, 2015. (ECF No. 6).

[3] Hypoxic encephalopathy refers to a lack of oxygen to the entire brain, which typically results in brain damage. 3 Laith Farid Gulli & Alfredo Mori, The Gale Encyclopedia of Medicine 1743 (5th ed. 2015).

*Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. Genuine issues of material fact exist when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 47 U.S. at 249. A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

## DISCUSSION

Plaintiffs allege Mr. Girlinghouse suffered injury as the proximate result of improper medical care provided by NPMC. Specifically, Plaintiffs allege NPMC's nursing staff failed to adequately respond to Mr. Girlinghouse's decreasing oxygenation levels and refused to call Mr. Girlinghouse's physician to address the issue. Defendants argue that, without expert testimony to support these allegations as required by Arkansas law, Plaintiffs' claim fails to set forth a viable cause of action.

In a suit based on diversity of citizenship jurisdiction, federal courts apply federal law to matters of procedure and the substantive law of the relevant state. *Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1255 (8th Cir. 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In this case, Arkansas is the forum state and the alleged conduct happened in Hot Springs, Arkansas. Therefore, the substantive law of Arkansas applies. Under the requirements of Ark. Code Ann. § 16-144-206(a), the plaintiff in a medical malpractice action must prove "the applicable standard of care; that the medical provider failed to act in accordance with that standard; and that such failure was a proximate cause of the plaintiff's injuries." *Ford v. St. Paul Fire & Marine Ins. Co.*, 339 Ark. 434, 437, 5 S.W.3d 460, 462 (1992). Regarding the third requirement, this statute imposes the "traditional tort standard of requiring proof that 'but for' the tortfeasor's negligence, the plaintiff's injury or death would not have occurred." *Id.*, 5 S.W.3d at 462-63.

Medical malpractice plaintiffs must present proof on the issue of proximate causation in the form of opinion testimony from a qualified medical expert. Ark. Code Ann. § 16-144-206(a)(3); *Ford*, 339 Ark. at 437, 5 S.W.3d at 463. It is insufficient for an expert to merely opine that negligence was the proximate cause of the injury. *Ford*, 339 Ark. at 437, 5 S.W.3d at 463. The expert's opinion must be stated with a reasonable degree of medical certainty or probability. *Id.* Defendants argue that summary judgment is proper in this case because Plaintiffs have failed to establish the essential proximate cause element through expert testimony.

Plaintiffs offered three experts on the issue of proximate causation: Dr. Donald Brady, a treating neurologist; Dorothy Cooke, RN ("Nurse Cooke"); and Toni Girlinghouse, RN.[4] Dr. Brady expected to testify "that the negligence described by Toni Girlinghouse and delays in

---

[4] Toni Girlinghouse is also a plaintiff in this case.

4

addressing [Mr.] Girlinghouse's decompensation on the day in question resulted in a permanent brain injury." (ECF No. 47-4). Dr. Brady was deposed on May 20, 2016, where he stated that Mr. Girlinghouse's oxygenation saturation percentage never dropped low enough on January 30, 2013 to cause hypoxic ischemic encephalopathy. He also testified that he believes Mr. Girlinghouse suffered a brain injury on January 31, 2013, and that the brain injury was multifactorial, with factors including hypoxic-ischemic insult, renal insufficiency, prolonged sedation, acute narcotic withdrawal, alcohol withdrawal, environmental factors, sepsis, and multi-organ insult. Defendants argue that Dr. Brady's testimony is insufficient to establish the proximate-cause element of Plaintiffs' *prima facie* case. The Court agrees. Dr. Brady's testimony did not conclusively state that Mr. Girlinghouse's injuries were proximately caused by the acts or omissions of NPMC's nursing staff. Accordingly, the Court finds Dr. Brady's testimony insufficient to prove proximate cause.

The Court finds that the only remaining expert opinions offered by Plaintiffs on proximate cause are those of Nurse Cooke and Toni Girlinghouse. Plaintiffs initially designated Nurse Cooke to testify as to the applicable nursing standard of care. Nurse Cooke's expert disclosure report and deposition focused on the nursing standard of care, featuring no opinions on proximate cause. On August 27, 2016, Plaintiffs offered an affidavit from Nurse Cooke in which she opined that Mr. Girlinghouse's brain injury was proximately caused by the nursing care he received while at NPMC.

Plaintiffs designated Toni Girlinghouse as an expert on the applicable nursing standard of care. On August 27, 2016, Plaintiffs offered an affidavit from Toni Girlinghouse, in which she opined that Mr. Girlinghouse's brain injury was proximately caused by the nursing care he received while at NPMC.

Defendants argue that the August 27, 2016 affidavits from Nurse Cooke and Toni Girlinghouse, in which they opine on proximate cause, were untimely disclosed and, under federal law, should not be considered. Defendants argue in the alternative that if the affidavits are considered, they are insufficient to satisfy the proximate-cause element because, under Arkansas law, nurses are unqualified to opine on proximate cause. The Court now turns its analysis to whether the two August 27, 2016 affidavits should be considered.

### A.  Exclusion of Post-Deposition Affidavits

Defendants argue that the August 27, 2016 affidavits of Nurse Cooke and Toni Girlinghouse should not be considered because they were untimely disclosed. For the reasons that follow, the Court agrees.

During discovery, parties must disclose all expert witnesses expected to be called at trial. Fed. R. Civ. P. 26(a)(2)(A). For retained expert witnesses, parties must also provide a written report stating, *inter alia*, a "complete statement" of all of the expert's opinions and the basis for them. Fed. R. Civ. P. 26(a)(2)(B).[5] Rule 26(e) does not authorize the practice of disclosing some expert opinions at the deadline and, only later, conducting discovery in hopes of adding additional opinions. *See Chapman v. Labone*, 460 F. Supp. 2d 989, 998 (S.D. Iowa 2006) (striking portions of an affidavit offered in resistance to a summary judgment motion because they contained new expert opinions not addressed in the expert's report). If a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

A post-deposition affidavit to contradict prior testimony in an attempt to create an issue

---

[5] A written report is not required for non-retained expert witnesses, but parties must nonetheless disclose all of the non-retained expert's opinions. Fed. R. Civ. P. 26(a)(2)(C)(ii).

of fact is not permissible. *Taylor v. Cottrell, Inc.*, 795 F.3d 813, 818 (8th Cir. 2015). However, an affidavit may be submitted to clarify ambiguities or confusion in prior deposition testimony. *See City of St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 476 (8th Cir. 2006).

In addressing a late disclosure, the Court has wide discretion to fashion an appropriate remedy. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). When fashioning a remedy, the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony. *Sellers v. Mineta*, 350 F.3d 706, 711-12 (8th Cir. 2003); *see also Marti v. City of Maplewood*, 57 F.3d 680, 683 (8th Cir. 1995) (setting forth a variety of possibly relevant factors).

The Eighth Circuit instructs that the Court's discretion narrows as the severity of the sanction increases. *See Heartland Bank v. Heartland Home Fin., Inc.*, 335 F.3d 810, 817 (8th Cir. 2003) (stating where exclusion of evidence was tantamount to dismissal of claims, the district court should have considered lesser sanctions); *Laclede Gas Co. v. G.W. Warnecke Corp.*, 604 F.2d 561, 565-66 (8th Cir. 1979) (holding drastic sanctions, such as dismissal, require a finding of willfulness, bad faith, or fault on the part of the noncompliant party). Though "[e]xclusion of evidence is a harsh penalty and should be used sparingly," it is within the bounds of the Court's discretion in appropriate cases. *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir. 1995).

### 1. Nurse Cooke's August 27, 2016 Affidavit

In this case, Nurse Cooke was only initially offered as an expert witness on the standard of care. Nurse Cooke's expert witness report opined on the nursing standard of care, making no mention of proximate causation. Likewise, Nurse Cooke offered no opinions on proximate

causation in her May 16, 2016 deposition.[6]   According to the Court's case schedule for this matter, expert disclosures were due on May 2, 2016; rebuttal disclosures were due on June 17, 2016; and the discovery deadline was set for August 1, 2016.  On August 27, 2016, Plaintiffs offered an affidavit by Nurse Cooke in which she, for the first time, gave an opinion on proximate causation.

Defendants argue that Plaintiffs failed to make complete and timely expert witness disclosures pursuant to Rule 26(a)(2)(B) due to the fact that Nurse Cooke's expert-witness designation, expert-witness report, and deposition made no mention of her intent to offer an opinion on proximate causation.  Nurse Cooke did not offer such an opinion until nearly four months after the deadline for expert disclosures, nearly a month after the close of discovery, and after Defendants filed the present Motion for Summary Judgment.  Thus, the Court finds that Plaintiffs failed to make full and timely expert-witness disclosures.  *See Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998).  The Court's analysis now turns to whether Plaintiff's untimely disclosure was harmless or substantially justified, thus precluding its exclusion.

Plaintiffs argue in their sur-reply that supplementing an expert opinion via Nurse Cooke's affidavit was necessary because "critical evidence was not revealed until after the Cooke deposition when Dr. Shah was deposed."[7]  (ECF No. 59).  However, Plaintiffs did not explain

---

[6] In the May 16 deposition, defense counsel asked Nurse Cooke if she planned to give an opinion on causation, to which she responded, "[i]t depends on if I'm asked.  Generally, I'm not asked that question. . . . Registered nurses typically can't comment on causation.  And I don't know how it varies from court to court."  Defense counsel responded that Arkansas does not allow nurses to comment on causation, and that they would skip that topic.  (ECF No. 47-3, at 123:17 – 124:9).

[7] Dr. Siddarth Shah, a pulmonologist who treated Mr. Girlinghouse during the events in issue, was named by Plaintiffs as a non-retained pulmonology expert, and was deposed on May 21, 2016.  He testified that he appropriately intervened in Mr. Girlinghouse's care on January 30, 2013, and that he could not conclusively say that a "better outcome" would have occurred if he had acted sooner than he did.

what critical evidence was revealed, or why Cooke's affidavit is necessary.  Plaintiffs argue further that "it will not work an injustice to Defendant for this evidence to be considered and no continuance would be necessary.   However, if the evidence is stricken, it would work a substantial injustice to Plaintiffs and lead to an unjust result based on procedure rather than merit."  (ECF No. 59).  Defendants maintain that consideration of this new opinion would significantly prejudice them in preparing for trial, as it would require that additional depositions be taken, expert witness rebuttal reports be issued, and could require *Daubert* challenges.[8]  (ECF No. 55).

Dr. Shah was deposed on May 21, 2016.  The deadline for rebuttal disclosures fell on June 17, 2016.  Rather than provide Nurse Cooke with Dr. Shah's deposition testimony soon after his deposition so that she could produce a supplementary affidavit before the June 17, 2016 deadline, Plaintiffs did not file the affidavit until August 27, 2016, after Defendants moved for summary judgment.  This disclosure came well after the close of all relevant discovery deadlines, and roughly two months before this case's trial date of October 24, 2016.  Plaintiffs did not file a motion to extend the deadline to include new information or supplement expert reports.  Cooke's post-discovery affidavit did not state she was clarifying her initial opinions.  In fact, because her initial report did not contain the proximate-cause opinion expressed in the subsequent affidavit, there was no opinion that was necessary to explain.

The Court finds that the surprise and prejudice to the opposing party is significant, and that allowing the information or testimony would disrupt the order and efficiency of the trial. *See Trost*, 162 F.3d at 1008 (finding significant prejudice to defendant and disruption to the district court's schedule where late disclosure of an expert's affidavit occurred on November 18 and trial was set for January).  As stated, trial in this matter is set for October 24, 2016, which

[8] This case's deadline for *Daubert* challenges passed on September 26, 2016.

would leave Defendants with little time to prepare.  Keeping in mind that the exclusion of evidence is an extreme sanction, the Court finds that the exclusion of Nurse Cooke's August 27, 2016 affidavit is warranted.

### 2. Toni Girlinghouse's August 27, 2016 Affidavit

The same analysis set out above also applies to Toni Girlinghouse's August 27, 2016 affidavit.  Plaintiffs designated Toni Girlinghouse as an expert on the nursing standard of care, with no mention of proximate cause.  It was not until after the close of all witness-disclosure deadlines and discovery that Plaintiffs produced the affidavit of Toni Girlinghouse in which she, for the first time, opined on proximate cause.  Plaintiffs do not appear to dispute that this post-discovery affidavit was untimely disclosed.  As such, the Court finds that this constituted untimely disclosure and, for the same reasons set out above, the late disclosure was not harmless and was substantially prejudicial to Defendants.  Keeping in mind that the exclusion of evidence is an extreme sanction, the Court finds that exclusion of Toni Girlinghouse's August 27, 2016 affidavit is warranted.

### B. Nurses' Expert Witness Opinions on Proximate Cause in Arkansas

Assuming *arguendo* that exclusion of Nurse Cooke and Toni Girlinghouse's August 27, 2016 affidavits is improper, the Court must decide whether the affidavits are sufficient to satisfy Plaintiffs' burden under Arkansas law to prove proximate cause through expert testimony. Plaintiffs argue that the testimony of a Registered Nurse ("RN") is sufficient to support proximate causation.  Defendants argue that under Arkansas law, RNs are unqualified to give opinions on proximate cause in medical malpractice cases.

Medical malpractice plaintiffs in Arkansas must present proof on the issue of proximate causation in the form of opinion testimony from a qualified medical expert.  Ark. Code Ann. §

16-144-206(a)(3); *Ford v. St. Paul Fire & Marine Ins. Co.*, 339 Ark. 434, 437, 5 S.W.3d 460, 463 (1992).  It is insufficient for an expert to merely opine that negligence was the proximate cause of the injury.  *Ford*, 339 Ark. at 437, 5 S.W.3d at 463.  The expert's opinion must be stated with a reasonable degree of medical certainty or probability.  *Id.*

Plaintiffs argue in their Brief in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment that "[t]he testimony of a Registered Nurse is sufficient to support proximate causation in a medical malpractice case."  (ECF No. 53).  Plaintiffs rely on *Rose Care, Inc. v. Ross*, a 2005 opinion where the Arkansas Court of Appeals affirmed a medical malpractice jury verdict, stating, "Brown's [RN] opinions, in their entirety, contain substantial evidence from which the jury could have fairly inferred a causal link between Rose Care's conduct and Mrs. Givens's injuries."  91 Ark. App. 187, 202, 209 S.W.3d 393, 402 (2005).

The Court finds that *Rose* is distinguishable from the instant case because the *Rose* appeals court was not confronted with the issue of whether the nurse was qualified to opine on proximate cause.  In fact, the appeals court noted specifically that the appellant did not raise the issue of qualification, instead appealing solely on the basis that there was insufficient evidence regarding proximate cause.  *Rose*, 91 Ark. App. at 201, 209 S.W.3d at 401.  Looking solely at the sufficiency of the evidence, the *Rose* court found that the nurse's testimony presented sufficient evidence on proximate cause.  *Id.* at 202, 209 S.W.3d at 402.  Here, Defendants specifically argue that Nurse Cooke and Toni Girlinghouse, both nurses, are unqualified to offer an opinion on proximate cause.

Defendants' reply brief (ECF No. 55) points the Court to *Carter v. St. Vincent Infirmary* and *Neal v. Sparks Regional Medical Center*.  In *Carter*, the Arkansas Court of Appeals addressed the plaintiff's appeal of a medical malpractice jury verdict, specifically addressing

whether the trial court erred in excluding the rebuttal testimony of an RN called by the plaintiff. The court noted, "Nurse Bradshaw's testimony . . . [was] relevant admissible evidence on rebuttal . . . . Of course, the witness was not qualified to make a diagnosis of appellant's injury and the causation thereof." *Carter v. St. Vincent Infirmary*, 15 Ark. App. 169, 175, 690 S.W.2d 741, 745 (1985).

In *Neal*, the Arkansas Supreme Court affirmed the trial court's granting summary judgment in favor of the defendant. *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, at 14, 422 S.W.3d 116, 123. In response to the defendant's motion for summary judgment, the *Neal* plaintiff attempted to meet the evidentiary burden on causation by offering the deposition testimony of two doctors and the affidavit of a nurse. *Id.* at *4, 422 S.W.3d at 119. The trial court determined that the two doctors did not opine that the decedent's death was proximately caused by any actions of the defendant's employees. *Id.* Thus, the trial court determined that the nurse's affidavit was the only evidence offering an opinion on proximate causation. *Id.* at *5, 422 S.W.3d at 119. The trial court granted summary judgment on the basis that the plaintiff failed to meet the burden of proof, stating that "[a]lthough a nurse may be an expert witness as to the standard of care for other nurses, it is not proper for a nurse to offer testimony on the issue of proximate causation as this is outside the area of their expertise." *Id.* The high court affirmed, noting in a footnote the trial court's statement regarding nurses, and finding that the plaintiffs failed to meet their evidentiary burden regarding proximate cause. *Id.* at *10-11, 422 S.W.3d at 122.

The Court finds the facts of the instant case are similar to those of *Neal*. Like in *Neal*, Plaintiffs in this case designated a doctor as an expert, and the doctor gave testimony in which he did not conclusively state that Mr. Girlinghouse's injuries were proximately caused by acts or

omissions of NPMC's nurses.  In response to Defendants' summary judgment motion, Plaintiffs offered the affidavits of two nurses, both opining on proximate cause.  The Court finds that under Arkansas law, RNs are unqualified to offer such opinions.  Plaintiffs have offered no qualified expert testimony on the issue of proximate cause, and thus have not set forth a viable cause of action under Arkansas law.  Defendants are therefore entitled to summary judgment as a matter of law.

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 47) should be and hereby is **GRANTED**.  Plaintiffs' case is hereby **DISMISSED WITH PREJUDICE**.  A separate Judgment consistent with this Opinion will be entered.

**IT IS SO ORDERED**, this 28th day of September, 2016.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

13